## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN PAUL THOMAS,

      Petitioner,

  v.                                                    CV 09-1009 WJ/LAM

GEORGE TAPIA,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

    **THIS MATTER** is before the Court on Petitioner John Paul Thomas' *Amended 28 U.S.C. Section 2254 [Petition]* (hereinafter "*Amended Petition*") (*Doc. 19*), filed on March 29, 2010. Mr. Thomas had filed his original petition pursuant to § 2254 on October 21, 2009. *28 U.S.C. Section 2254 [Petition]* (hereinafter, "*Petition*") (*Doc. 1*). In response to the *Amended Petition*, Respondent filed *Respondents' Answer to Petition for Writ of Federal Habeas Corpus (28 U.S.C. § 2254)* (*Doc. 23*) (hereinafter "*Response*") on June 9, 2010. United States District Judge William P. Johnson referred the claims raised in the *Amended Petition* to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. *Order of Reference Relating*

---

[1] Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

***to Bankruptcy Appeals, Social Security Appeals and Prisoner Cases*** (*Doc. 4*). Having considered the parties' submissions, relevant law, and the record in this case, the undersigned recommends, for the reasons set forth below, that the claims raised in Mr. Thomas' ***Amended Petition*** be **DENIED** because they are without merit and that this case be **DISMISSED with prejudice**.

Because the issues in this case can be resolved on the record before the Court, the Court **FINDS** that an evidentiary hearing is unnecessary. *See Anderson v. Attorney General of Kansas*, 425 F.3d 853, 858–59 (10th Cir. 2005) (evidentiary hearing unnecessary if § 2254 habeas claim can be resolved on the record).

Mr. Thomas was incarcerated at the time that he filed his initial petition on October 21, 2009 (***Response*** (*Doc. 23*) at 2), but was released from custody on March 12, 2010 (***Response***, Ex. C (*Doc. 23-1*) at 13). He is proceeding *pro se*. *See **Amended Petition*** (*Doc. 19*) at 13.

## I. Factual and Procedural Background

Mr. Thomas was arrested by local authorities on October 18, 2007 and charged with Possession of a Stolen Vehicle, Conspiracy to Commit Possession of a Stolen Vehicle, and Possession of Drug Paraphernalia. ***Response***, Ex. A (*Doc. 23-1*) at 1–2; *see **Amended Petition*** (*Doc. 19*) at 1. Mr. Thomas was convicted of these crimes on March 21, 2008, pursuant to a guilty plea accepted by the state court. ***Response***, Ex. A (*Doc. 23-1*) at 1. While Mr. Thomas was a pretrial detainee at the Doña Ana County Detention Center (herinafter, "DACDC"), he filed his first petition for a writ of habeas corpus with the state courts. ***Response***, Ex. D (*Doc. 23-1*) at 14–21; *see **Amended Petition*** (*Doc. 19*) at 1. Mr. Thomas asserted that DACDC was in violation of his and all pre-trial detainees' Fifth Amendment right to due process because it lacked a law library, which he needed in order to "attempt to understand the exact nature of his charges" (***Response***, Ex. D (*Doc. 23-1*) at 15) and "to litigate" other matters, such as "a habeas corpus on his trial court [for]

2

violating his 6th Amendment Right to a fast and speed[y] trial as well as a habeas corpus against his extradition out of the state of California"[2] (*id.* at 16–17).  As relief, he asked the state trial court to "issue a writ of habeas corpus[,] declare the rights of all parties[,] declare [DACDC] in violation of all pre-trial detainee[s'] civil rights[,] order [DACDC] to immediately provide access to a law library to all inmates[, and] order any/all other relief the courts deem proper." ***Response***, Ex. D (*Doc. 23-1*) at 17–18.  On April 22, 2008, the Third Judicial District Court summarily dismissed the petition because, under *Bounds v. Smith*, 430 U.S. 817, 828 (1977), DACDC was not obligated to provide a law library for Mr. Thomas because he had been appointed counsel and because Mr. Thomas had not alleged that his counsel was ineffective.  *Id.*, Ex. E (*Doc. 23-1*) at 22–23.

Mr. Thomas petitioned the New Mexico Supreme Court for certiorari on the issue, clarifying his argument that he was effectively denied access to the courts with respect to his potential, civil claims related to the conditions of his confinement because his counsel was appointed to represent him only in his criminal case, not in these potential, civil claims.  *Id.*, Ex. F (*Doc. 23-1*) at 25–29. The State responded to the petition on September 4, 2008, asserting several grounds for denial, to wit:  (1) because Mr. Thomas was no longer confined at DACDC, the petition was moot; (2) because Mr. Thomas was represented by counsel in his criminal case, he was not denied access to the courts; (3) because Mr. Thomas filed and was prosecuting his habeas petition, he was not denied access to the courts; and (4) Mr. Thomas failed to exhaust his administrative remedies.  *Id.*, Ex. G (*Doc. 23-1*) at 41–42.  On August 30, 2008, Mr. Thomas filed a motion for summary judgment, in which he conceded that his petition was moot when he was transferred from DACDC to another institution but insisted that "the issue of this habeas corpus does not fall under jail conditions, but rather denial

---

[2]  Although not at issue here, it is unclear whether Mr. Thomas wanted to challenge an extradition *from* California or *to* California because he describes both in his submissions.  *Compare **Response**, Ex. D (*Doc. 23-1*) at 17 ("extradition out of the state of California") with **Amended Petition** (*Doc. 19*) at 2* ("extradition to California").

of due process." *Id.*, Ex. H (*Doc. 23-2*) at 6.  He argued that under *Bounds* he was guaranteed the right to a law library, not for his criminal case in which he was represented by counsel, but for challenging the "legalities of [the] case, sentence, or confinement conditions." *Id.* at 7.  The New Mexico Supreme Court denied Mr. Thomas' petition for the writ and denied his motion for summary judgment, without elaboration, on September 11, 2008.  *Id.*, Ex. I (*Doc. 23-2*) at 12.

The next month, Mr. Thomas filed two more petitions for writs of habeas corpus, one in federal court and one in his trial court.  On October 27, 2008, he filed a petition here in the United States District Court for the District of New Mexico under 28 U.S.C. § 2254, and ultimately he asserted claims related to the lack of a law library at DACDC and to his extradition.  *Revised Proposed Findings and Recommended Disposition* (*Doc. 17*) at 2, filed in Case No. CIV-08-1016 JH/WPL.  On October 30, 2008, he filed a second petition in the Third Judicial District Court, raising many of the claims that he now asserts, to wit, the state prosecutor in underlying criminal case violated his right to due process "by denying [him] his right to client/attorney confident[i]ality" and by the "use of illegal coercion by way of threats, intimidation, and by unfulfilled promises to [his] family;" the state trial court violated his right to a speedy trial by "refusing to separate [his] case from his co-defendant's" case, by "imposing an illegal continuance on [his] case," by imposing "illegal and case irrelev[a]nt fines as part of [his] sentencing," and for "convict[ing] him in double jepordy [sic]." *Response*, Ex. J (*Doc. 23-2*) at 13–14.

On June 3, 2009, the Honorable Judith C. Herrera, United States District Judge, adopted the recommendation of the Honorable William P. Lynch, United States Magistrate Judge, regarding the § 2254 petition.  *Order Adopting Magistrate Judge's Revised Proposed Findings and Recommended Disposition* (*Doc. 19*) at 1–2, filed in Case No. CIV-08-1016 JH/WPL. Judge Herrera dismissed all of the claims without prejudice to allow Mr. Thomas time to exhaust

4

his state-court remedies.  *Id.* at 2.  On June 8, 2009, the Third Judicial District Court summarily

dismissed the second state-court petition, holding that the plea agreement that Mr. Thomas entered

and the manner in which the court accepted the agreement, evidenced that he was not coerced into

pleading guilty; that Mr. Thomas had waived any speedy-trial challenge when he pled guilty; that

his conviction did not violate his right to protection from double jeopardy because "[e]ach of the[]

offenses require[d] proof of an additional fact which the other [did] not," so the offenses did not

merge and the convictions did not violate the prohibition against double jeopardy; finally, the court

held that the fees assessed by the court were consistent with state law.  ***Response***, Ex. K (*Doc. 23-2*)

at 26–28.  Because the Chief Clerk of the Supreme Court of New Mexico returned Mr. Thomas'

petition for certiorari on August 14, 2009, advising that it could not be accepted for filing because

it was late, it appears that he did not timely appeal the dismissal.  *Id.*, Ex. L (*Doc. 23-2*) at 14.

## II.  Mr. Thomas' Current § 2254 Claims

On October 21, 2009, Mr. Thomas filed the instant petition pursuant to § 2254, asserting

most[3] of the claims that he asserted in his second state-court habeas petition and no new claims.

***Petition*** (*Doc. 1*) at 8.  Mr. Thomas was released from custody on March 12, 2010 (***Response***, Ex. C

(*Doc. 23-1*) at 13), but the record indicates that he is on parole.  *Id.*, Ex. A (*Doc. 23-1*) at 2.  With

leave of Court (***Order*** (*Doc. 10*) at 1–2; ***Letter*** (*Doc. 12*)), Mr. Thomas filed an amended petition

on March 29, 2010, adding his law-library claim and expressly challenging the validity of his plea

(***Amended Petition*** (*Doc. 19*) at 1–13).  His pending claims, therefore, are: (A) that the lack of law

library at DACDC violated his right to access to the courts and that his attorney was incompetent;

---

[3]  The claims asserted in Mr. Thomas' second state-court habeas petition that are *not* raised here are that the
state district court: (1) violated his right to a speedy trial by refusing to separate his trial from his co-defendant's trial,
(2) violated his right to speedy trial by "imposing an illegal continu[a]nce," and (3) imposed "illegal and case[-]irrelevant
fines."  ***Response***, Ex. J (*Doc. 23-2*) at 13–14.

(B) that the "unknown" prosecutor violated his right to attorney/client confidentiality; (C) the prosecutor "illegally coerced [him] into pleading guilty by means of threats and intimidation;" (D) that one of the prosecuting attorneys, Ms. Pickett, "illegally coerced [him] into pleading guilty by means of unfulfilled promises;" (E) that the trial violated [his] Sixth Amendment right to a speedy trial thereby forcing him to accept a plea agreement; (F) that the plea agreement was itself "illegal" and therefore "invalid and void;" and (G) that he was "convicted and sentenced . . . in double jeopardy." *Id.* at 12–13.

Defendants filed their ***Response*** (*Doc. 23*) on June 9, 2010, arguing that Mr. Thomas is not entitled to relief under § 2254 for two reasons. First, they assert that Mr. Thomas does not meet the in-custody requirement of § 2254 because his underlying conviction was discharged when he was released on March 12, 2010 and, therefore, his claims are moot. *Id.* at 8–12. Second, they assert that all but one of his claims, the one regarding the law library, are procedurally defaulted because he failed to raise them in the state's highest court and cannot show the requisite cause and prejudice or a fundamental miscarriage of justice to excuse his failure. *Id.* at 6–10.

In reviewing a *pro se* litigant's complaint, courts apply the same legal standards applicable to pleadings drafted by counsel but liberally construe the allegations. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992). Despite liberal construction of a *pro se* litigant's pleadings, however, courts cannot "assume the role of advocate" for him. *Hall*, 935 F.2d at 1110. Courts "are not required to fashion Defendant's arguments for him where his allegations are merely conclusory . . . and without supporting fact[s]." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). "[C]onclusory allegations without supporting factual averments are insufficient

to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110. Because Mr. Thomas is a *pro se* litigant, the Court construes his allegations in his ***Amended Petition*** liberally.

### III.  Mootness

A § 2254 petitioner, must be "in custody" at the time the petition is filed, and his claims must assert a right to release from that custody on federal law grounds. *See* 28 U.S.C. § 2254(a) (a "court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is *in custody in violation of the Constitution or laws or treaties of the United States*.") (emphasis added). Respectively, these are referred to as the status and substance requirements. *See Kirby v. Janecka*, No. 09-2097, 2010 WL 2075414 at *1 (10th Cir. May 25, 2010) (unpublished) ("The status requirement mandates that the petitioner raise his claims while he is in custody, and the substance requirement mandates that those claims assert a right to release from that custody on federal law grounds."). The "in custody" requirement "encompasses not only individuals subject to immediate physical imprisonment, but also those subject to restraints not shared by the public generally that significantly confine and restrain freedom." *Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009) (citing *Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 510 (1982)). For example, petitioners who are on parole are considered to be "in custody." *Mays*, 580 F.3d at 1139. Even if a petitioner's status and substance of his claim meet the § 2254 requirements, his claims may nevertheless become moot if he has completed his entire sentence, including incarceration and parole, and he cannot show that "sufficient collateral consequences flow from the underlying judgment and the completed sentence." *United States v. Myers,* 200 F.3d 715, 718 (10th Cir. 2000) (citing *Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998)).

Here, Respondent Tapia asserts that Mr. Thomas does not meet the "in custody" requirement because, after he filed the instant Petition, he was released from prison. ***Response*** (*Doc. 23*) at 8–10. Although Mr. Thomas has been released from prison (*id.*, Ex. C (*Doc. 23-1*) at 13), the record indicates that he is on parole (*id.*, Ex. A (*Doc. 23-1*) at 2 ("[T]he Court sentences the Defendant to a total term of two (2) years and six (6) months in the custody of the New Mexico Corrections Department *to be followed by one (1) year on parole*.") (emphasis added)).   As a parolee, Mr. Thomas meets the "in custody" requirement, and his claim is not moot.

### *IV.  Exhaustion*

A state prisoner must generally exhaust available state court remedies before a federal court can consider the prisoner's habeas petition under 28 U.S.C. § 2254.  *See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).  The exhaustion requirement is considered satisfied "if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."   *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted).  The Tenth Circuit has held that a state prisoner does not fully exhaust state remedies without timely seeking certiorari review with the state supreme court. *Barnett v. LeMaster*, 167 F.3d 1321, 1323 (10th Cir. 1999).  When a petitioner has failed to fulfill the exhaustion requirement, a court will generally dismiss the petition without prejudice to allow the petitioner to exhaust his state remedies.  *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997) (citations omitted).  "However, in considering unexhausted claims, federal courts should consider whether, upon dismissal of the claims, the petitioner would then be able to raise them in the state courts." *Id.*  "[I]f the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review."  *Dulin v. Cook*, 957 F.2d 758, 759

(10th Cir. 1992) (citation omitted).  A federal court will not consider defaulted claims unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice (*Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999) (citation and internal quotation marks omitted)), or if the Court determines that the claims can be resolved on the merits (*see* § 2254(b)(2) (providing that a federal habeas court may deny a claim on the merits, notwithstanding the failure to exhaust state remedies); *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000) (declining to address complex procedural bar because case could be more easily and succinctly affirmed on the merits)).

Mr. Thomas failed to timely file a petition for a writ of certiorari with the New Mexico Supreme Court on these claims: (B) that the "unknown" prosecutor violated his right to attorney/client confidentiality; (C) the prosecutor "illegally coerced [him] into pleading guilty by means of threats and intimidation;" (D) that one of the prosecuting attorneys, Ms. Pickett, "illegally coerced [him] into pleading guilty by means of unfulfilled promises;" (E) that the trial violated [his] Sixth Amendment right to a speedy trial thereby forcing him to accept a plea agreement; (F) that the plea agreement was itself "illegal" and therefore "invalid and void;" and (G) that he was "convicted and sentenced . . . in double jeopardy." ***Amended Petition*** (*Doc. 19*) at 12–13. Under New Mexico's procedural rules, a petitioner may file a petition for a writ of certiorari with the New Mexico Supreme Court within thirty days of the state district court's order denying the habeas corpus petition. *See* N.M.R.A. 12-501(B). Mr. Thomas' appeal was not timely, and claims B through G are, therefore, procedurally defaulted for purposes of federal habeas review and should not be considered by this Court unless Mr. Thomas can demonstrate cause *and* prejudice *or* a fundamental miscarriage of justice (*see Smallwood*, 191 F.3d at 1268), or if the Court determines that the claims can be easily resolved on the merits (*see* § 2254(b)(2), and *Romero*, 215 F.3d at 1111).

In order to satisfy the "cause" standard, Mr. Thomas would need to show that "some objective factor external to the defense impeded his compliance with New Mexico's procedural rules." *Watson v. State of New Mexico*, 45 F.3d 385, 388 (10th Cir. 1995) (citations omitted).  In addition, to demonstrate a "fundamental miscarriage of justice" in order to overcome a procedural bar, Mr. Thomas would need to make "a colorable showing of factual innocence." *Demarest*, 130 F.3d at 941 (citation omitted).  A claim of factual innocence requires "evidence of innocence so strong that a court cannot have any confidence in the outcome of the trial." *Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998).  Here, although Mr. Thomas alleges cause,[4] he neither shows nor alleges prejudice, he neither shows nor alleges a "fundamental miscarriage of justice," and his failure to timely file his petition of certiorari, therefore, is not excused, and his claims are procedurally barred.

Nevertheless, the Court finds that even if these claims have not been exhausted and even if they are procedurally barred, in the interests of judicial economy, and pursuant to 28 U.S.C. § 2254(b)(2), the Court will consider all of Mr. Thomas' claims in this case on the merits and recommend, for the reasons set forth below, that relief be denied.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Patton v. Mullin*, 425 F.3d 788, 809-10 (10th Cir. 2005) (citing 28 U.S.C. § 2254(b)(2) as authority for the consideration of unexhausted § 2254 claims on the merits where the petitioner's claims were

---

[4]  Mr. Thomas explains his failure to timely file the certiorari petition by asserting that the "New Mexico Department of Corrections (NMDC) issued an emergency transfer of [him] to supermax lock up in another penitentiary. [His] personal property was then mistakenly withheld from him for several weeks and [he] was unable to file a timely petition . . . ." *Amended Petition* (*Doc. 19*) at 11.

unexhausted and procedurally barred and where petitioner did not argue the exceptions to the procedural bar of "cause and prejudice" or "fundamental miscarriage of justice").

### V.  Standard of Review

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and  Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter, "AEDPA"), govern this case.  The Court cannot grant Mr. Thomas habeas relief pursuant to 28 U.S.C. § 2254(d) unless the decision in his state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)–(2).  The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.  *See, e.g., Wright v. Van Patten*, 552 U.S. 120 (2008); *Fry v. Pliler*, 551 U.S. 112 (2007); *Bell v. Cone*, 543 U.S. 447 (2005) (per curiam); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); *Early v. Packer*, 537 U.S. 3 (2002) (per curiam); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.*  However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions.  [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).  *See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law).  Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply.  So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision."  *See Cook v. McKune*, 323 F.3d 825, 830–31 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision).  Moreover, if a state court's decision does not conflict with the reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous."  *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003).  If a state court decides a claim on the merits in summary fashion, the AEDPA standards still apply, but the focus is on the state court's results rather than any reasoning.  *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).

Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75–76 (2003) (internal quotations and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76. A state court cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law," under 28 U.S.C. § 2254(d)(1), if no Supreme Court decision provides a clear answer to a question presented in the state court. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d). If the state court did not adjudicate the claim on the merits, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)). Under the pre-AEDPA standard of review, a state court's findings of fact are afforded a presumption of correctness, and both legal conclusions and mixed questions of law and fact are reviewed *de novo*. *See Castro v. Ward*, 138 F.3d 810, 815–16 (10th Cir. 1998). "[T]he presumption of correctness will continue to apply

13

to any findings of fact underlying mixed questions." *Id.* at 816 (quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989)); *see also* 2 Randy Hertz and James S. Liebman, *Federal Habeas Corpus Practice and Procedure*, § 32.1 at 1565 (5th ed. 2005) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

## VI. Analysis

Subject to the foregoing standards, the Court considers Mr. Thomas' claims in this proceeding.

### A. Ineffective Assistance of Counsel and Double-Jeopardy (Corresponding to Mr. Thomas' Claims A, F, and G)

First, Mr. Thomas asserts that his trial counsel was ineffective because the attorney advised him to "enter into an illegal plea, [so] it goes to say that [his] counsel was incompetent." ***Amended Petition*** (*Doc. 19*) at 10.  To prevail on his ineffective-assistance-of-counsel claim, Mr. Thomas must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688.  Second, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The Court begins with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2006) (quoting *Strickland*, 446 U.S. at 689).

Mr. Thomas argues that his plea was "illegal" because it subjected him to double jeopardy when he pled guilty to both Possession of a Stolen Vehicle and Conspiracy to Commit Possession of a Stolen Vehicle. ***Amended Petition*** (*Doc. 19*) at 10.  This issue was ruled on by the state trial

court, which held that his conviction did not violate his protection from double jeopardy because "[e]ach of these offenses require[d] proof of an additional fact which the other [did] not," so the offenses did not merge and the convictions did not violate the prohibition against double jeopardy. *Response*, Ex. K (*Doc. 23-2*) at 27.  The trial court clarified for Mr. Thomas that the possession conviction required "proof that the person receives, transfers possession, or has in his possession any vehicle which he knows or has reason to believe has been stolen or unlawfully taken," while the conspiracy conviction required "proof that the person knowingly combines with another for the purpose of committing the felony of Possession of a Stolen Vehicle."  *Id.*

Because the trial court decided the issue on the merits, Mr. Thomas has the burden to show that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  He argues that the conspiracy charge is a lesser included offense of the possession charge because "it is impossible to commit Conspiracy To Commit Receiving/Transferring Stolen Vehicle without committing Receiving/Transferring Stolen Vehicle." *Amended Petition* (*Doc. 19*) at 9.  He argues that "state legislation does not even write these offenses []as two different statutes[;] instead Conspiracy to Commit Receiving/Transferring Stolen Vehicle is subsection 'C' of the Receiving/Transferring Stolen Vehicle statute (N.M.S.A. (1978) Section 66-3-505) and as written has all the elements of the lesser offense of Receiving/Transferring Stolen Vehicle."  *Id.*

Mr. Thomas has not met his burden under § 2254 because his claim is conclusory (*see Hall v. Bellmon*, 935 F.2d 1106, 1110) and because the trial court was, in fact, correct that each crime contains an element that the other does not and that, therefore, they do not merge, so his conviction of both did not violate his protection from double jeopardy.  At all relevant times, the conspiracy statute was found at NMSA 1978, § 30-28-2, *see State v. Guebara*, 119 N.M. 662, 664 (N.M. Ct.

App. 1995) (citing to § 30-28-2 as the statute codifying "conspiracy to receive or transfer a stolen

motor vehicle), contrary to Mr. Thomas' assertion that it was found at § 66-3-505(c).  Indeed, there

is not now, nor at any relevant time has there been, a subsection (c) in § 66-3-505, as he asserts.  The

conspiracy statute, § 30-28-2, and the possession of a stolen vehicle statute, § 66-3-505, each have

a necessary element that the other does not, just as the trial court held.  Section 30-28-2 of the New

Mexico Statutes Annotated (1978) (emphasis added), provides as follows:

> A. Conspiracy consists of *knowingly combining with another for the purpose of committing a felony* within or without this state.
>
> B. Whoever commits conspiracy shall be punished as follows:
>
> (1) if the highest crime conspired to be committed is a capital or first degree felony, the person committing such conspiracy is guilty of a second degree felony;
>
> (2) if the highest crime conspired to be committed is a second degree felony, the person committing such conspiracy is guilty of a third degree felony; and
>
> (3) if the highest crime conspired to be committed is a third degree felony or a fourth degree felony, the person committing such conspiracy is guilty of a fourth degree felony.

Section 66-3-505 of the New Mexico Statutes Annotated (1978) (emphasis added), *amended by*

Section 30-16D-4 (2009),[5] provides as follows:

> Any person who, with intent to procure or pass title to a vehicle or motor vehicle which he knows or has reason to believe has been stolen or unlawfully taken, *receives, or transfers possession of the same from or to another, or who has in his possession any vehicle which he knows or has reason to believe has been stolen or unlawfully taken* . . . is guilty of a fourth degree felony, and upon conviction shall be sentenced to imprisonment for not less than one

---

[5]  The statute was amended in 2009, which is of no consequence to this case because the crimes at issue for which Mr. Thomas was convicted were committed in 2007 and he was convicted in 2008.

> nor more than five years, or to the payment of a fine of not more than
> five thousand dollars ($5,000) or to both such imprisonment and fine
> in the discretion of the judge.

Furthermore, the Court finds that the decision of the state court is not contrary to federal law because it applied the same standard as is applied by the United States Supreme Court in determining double-jeopardy violations. *See Rutledge v. U.S.*, 517 U.S. 292, 297 (1996) ("the test to be applied to determine whether there are two offenses or only one is whether each [statutory] provision requires proof of a fact which the other does not") (quoting *Blockburger v. U.S.*, 284 U.S. 299, 304 (1932)). Because Mr. Thomas was not convicted of the same offense twice in violation of his protection from double jeopardy, which was the sole basis for his claim that his attorney was incompetent, he fails to meet his burden under either prong of *Strickland*. The Court, therefore, recommends that this claim be denied.

### B.  Lack of Access to a Law Library as a Pre-Trial Detainee
### (Corresponding to Mr. Thomas' Claim A)

Pursuant to § 2254, Mr. Thomas challenges his conviction because he did not have access to a law library when he was a pre-trial detainee at DACDC. *Amended Petition* (*Doc. 19*) at 1–2. Mr. Thomas repeatedly insists that his lack of access to a law library constituted a denial of access to the courts, not only with respect to his criminal prosecution, but also with respect to his other legal claims, such as a claim related to an extradition and claim in the Southern District of California for a civil rights violation. *Id.* at 2.

Relief under § 2254, however, is only available if the *decision in the state court proceeding*, that is, if the *conviction itself*, (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. §§ 2254(d)(1)–(2).  Thus, there are two issues imbedded in Mr. Thomas'

law-library claim: first, whether he is entitled to relief under § 2254 on his criminal conviction, and

second, whether he is entitled to relief under § 2254 on his other, civil legal claims.

Regarding the criminal conviction, the state court held that because Mr. Thomas was

represented by counsel during his criminal prosecution and because that counsel was not ineffective,

Mr. Thomas' lack of access to a law library as a pre-trial detainee was not improper.  *Response*,

Ex. E (*Doc. 23-1*) at 22–23.  Mr. Thomas has failed to meet his burden to show that the state court's

decision violated clearly established federal law.  Moreover, this Court agrees with the state trial

court that, under *Bounds v. Smith*, 430 U.S. 817, 828 (1977), Mr. Thomas was constitutionally

entitled to *either* access to a law library *or* to an attorney, but not both.  Because Mr. Thomas had

an attorney for his criminal charges and because that attorney was not constitutionally ineffective,

Mr. Thomas is not entitled to relief under § 2254 with respect to his law-library claim and criminal

conviction.

Regarding Mr. Thomas' lack of access to a law library to assist him in litigating his other,

civil claims, it appears that he misunderstands the law.  Mr. Thomas argues that he had the right to

access to a law library at DACDC and that DACDC violated that right by not providing one.  He

concludes that because he was incarcerated when DACDC violated his right, the charge for which

he was incarcerated, as well as its corresponding conviction, are vulnerable under § 2254.  In other

words, it appears that he is under the misconception that if any one of his rights is violated while he

is incarcerated, the remedy is found under § 2254, regardless of whether or not the violation is

related to his prosecution or conviction.  Such is not the case.  If the rights of a prisoner are violated,

but the violation is not related to the criminal prosecution or conviction for which he is incarcerated,

there may be remedies, but they are not prescribed by § 2254 because § 2254 provides relief only

where the petitioner is "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Mr. Thomas' law-library claim under § 2254 should, therefore, be denied with prejudice to the extent that he brings it under § 2254 because it is not so cognizable.[6]

### C. Attorney/Client Confidentiality and Privilege
### (Corresponding to Mr. Thomas' Claim B)

Mr. Thomas insists that when he was in the courtroom with his attorney just before his change-of-plea hearing on March 21, 2008, an unknown prosecutor eavesdropped on their conversation and, thereby, "den[ied] Petitioner his due process right to attorney/client confidentiality." *Amended Petition* (*Doc. 19*) at 5. He asserts that as a result, he is entitled to relief under § 2254. *See id.*

It appears that Mr. Thomas is under a misconception about attorney/client confidentiality and privilege. Attorney/client confidentiality is the ethical duty of an attorney not to reveal information related to the representation of his client. Sue Michmerhuizen, *Confidentiality, Privilege: A basic value in two different applications*, http://www.abanet.org/media/youraba/200907/article10.html (last visited August 5, 2010). The remedy for a violation of the ethical duty is disciplinary action against the attorney. *Id.* The attorney/client privilege, on the other hand, is an evidentiary rule that prevents attorneys from being compelled to testify in court about the representation. *Id.* The privilege applies whenever an attorney is called to testify about the representation. *Id.* Section 2254 provides no remedy for the violation of either the ethical duty of confidentiality or of the testimonial

---

[6] To the extent that the Court may have discretion to construe the claim(s) as having been brought under some other statute, the Court declines to do so for several reasons. First, although the Court should liberally construe the pleadings of a *pro se* litigant, it should not cross the line into advocacy for the litigant. Because it is not immediately clear whether, or under what statute(s), Mr. Thomas' claim(s) could be cognizable, the Court declines any such construction. Second, Defendants have responded only in the context of § 2254 and the Court will not deprive them of their opportunity to respond under an alternative authority. Lastly, this is Mr. Thomas' second trip to federal court on this claim under § 2254, and in the interest of judicial economy, the Court recommends adjudicating it to the extent that it is asserted under § 2254.

privilege.  *See* 28 U.S.C. § 2254.  Even if Mr. Thomas' allegation were proven true, therefore, he would not be entitled to relief under § 2254.  Moreover, Mr. Thomas has failed to explain how he was prejudiced by the eavesdropping of the unknown prosecutor.  For these reasons, the Court recommends that his claim be denied.

### D.  Validity of the Guilty Plea
### (Corresponding to Mr. Thomas' Claims C, D, E, and F)

As discussed in Section A, herein, Mr. Thomas' convictions for both Conspiracy to Posses a Stolen Vehicle and Possession of a Stolen Vehicle did not violate his right to be free from double jeopardy, and the validity of his plea, therefore, is not questionable on that basis.  Mr. Thomas further asserts that the prosecutor in his case "coerced" him into pleading guilty through illegal "threats and intimidation," entitling him to relief under § 2254.  ***Amended Petition*** (*Doc. 19*) at 12. Mr. Thomas explains that the threats and intimidation consisted of the prosecutor "scream[ing]" that if Mr. Thomas did not accept the plea at the agreed-upon hearing, the prosecutor would "pull the plea and give [Mr. Thomas] five (5) years instead."  *Id.* at 5.  He states:

> Petitioner is a legal resident of San Diego, California, and the great distance between Petitioner and his home created a hardship on Petitioner's family.  Thinking of his family, Petitioner became scared and intimidated by the [prosecutor]'s threats and agreed not to postpone the change of plea [hearing].

> These kinds of prosecutorial tactics might be acceptable in normal situations, however the District Attorney's Office was well[-]aware that Petitioner lived a thousand (1,000) miles away in a different state and that Petitioner's mother is disabled and depend[e]nt on Petitioner.  Manipulating factors outside the criminal case to force a plea cannot be within the scope of Due Process.  Since Petitioner's outside factors were extreme and exceptional[,] the violation of civil rights is all the more present.

*Id.*  Additionally, he insists that one prosecutor, "Ms. Pickett[,] had told [his] mother more tha[n] once that she, Ms. Pickett, was going to ask for time served and probation . . . . [but] the plea offer

she left behind was an open plea ranging from 0 to 3[-]and[-]a[-]half years." *Id.* at 4.  Mr. Thomas then goes on to say that after he pled guilty, Ms. Pickett appeared at his sentencing and "asked for the maximum sentences on all three (3) charges." *Id.* at 7.  He concludes that he could not have known that she would "break her promises" at the time he pled guilty.  *Id.* at 10.  Finally, he mentions that the trial court violated his right to a speedy trial because he felt "frustrated and pressured into pleading guilty" when it granted a 90-day extension of time requested by his co-defendant, over his objection and when it denied his request to be tried separately from his co-defendant.  *Id.* at 3.  In sum, after disposing of the claim that double jeopardy rendered his plea illegal, which the Court addressed in Section A, Mr. Thomas also claims relief under § 2254 because his plea was rendered invalid when one prosecutor coerced his plea; when another prosecutor, Ms. Pickett, did not fulfill her promise to request time-served at his sentencing; and when he was "forced" into pleading guilty when the trial court violated his Constitutional right to speedy trial.

### 1.  Threats, Intimidation, and Coercion
### (Corresponding to Mr. Thomas' Claim C)

"[A] valid guilty plea may not be obtained through coercion." *Osborn v. Shillinger*, 997 F.2d 1324, 1327 (10th Cir. 1993) (citations omitted).  The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks and citations omitted).  On habeas review, a district court will "uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty." *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996).

The state trial court heard and decided these claims on the merits. *Response*, Ex. K (*Doc. 23-2*) at 26–27.  It found that Mr. Thomas "entered his guilty plea in open Court" (*id.* at 26) and received the benefit of the bargain" (*id.* at 26–27).  It further found that the trial court had "[a]s part of the colloquy [and] through inquiry of [Mr. Thomas], determined that the plea was voluntary and not the result of force, threats or promises other than in the plea agreement." *Id.* at 27.  Mr. Thomas, therefore, has the burden to show that the trial court's decision is either contrary to clearly established federal law or that it unreasonably determined the facts in light of the evidence.  *See* 28 U.S.C. §§ 2254(d)(1)–(2).

Mr. Thomas fails to meet his burden under § 2254.  Even if everything he said were true, his claim would still fail because his allegations do not constitute coercion or in any way render his plea invalid.  First, the prosecutor's "threat" to withdraw the plea and proceed with prosecution is a far cry from coercion.  It left Mr. Thomas with a decision faced by many defendants.  The facts that Mr. Thomas was from San Diego and had a disabled mother are irrelevant.  Mr. Thomas does not claim that he did not understand the plea; rather he asserts that he weighed his options and decided that he preferred to accept the plea rather than to take a chance with trial, which in no way constitutes coercion.  The Court, therefore, recommends that this claim be denied.

### 2.  *Unfulfilled Promises*
### *(Corresponding to Mr. Thomas' Claim D)*

"Where the government obtains a guilty plea predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea." *Cunningham v. Diesslin*, 92 F.3d 1054, 1059 (10th Cir. 1996) (applying the rule in the context of § 2254) (quoting *United States v. Hand*, 913 F.2d 854, 856 (10th Cir.1990) (applying the rule in the context of 28 U.S.C. § 2255)).

Here, even if Mr. Thomas showed that Ms. Pickett promised his mother that she would request a certain sentence, which he has not shown, such facts would be inconsequential because he did not rely on the promise in pleading guilty.  *See Response*, Ex. K (*Doc. 23-2*) at 27.  Rather, as the trial court found, and as Mr. Thomas has failed to overcome, Mr. Thomas entered into his plea agreement relying only on the promises contained in the agreement and none other.  *See id.*  The plea agreement clearly states that "[t]here are no agreements as to sentence," (*id.*, Ex. B (*Doc. 23-1*) at 5), leaving the prosecution free to argue for a maximum sentence.  Accordingly, this claim fails and should be denied.

### 3.  *Sixth Amendment Right to a Speedy Trial* <br> *(Corresponding to Mr. Thomas' Claim E)*

First, Mr. Thomas has not met his burden to show that the state court's decision not to invalidate his plea based on a speedy-trial issue violated clearly established federal law or involved an unreasonable application of law to fact.  Moreover, the waiver cited by the state court is recognized in federal law.  *Compare Response*, Ex. K (*Doc. 23-2*) at 27 (state court holding that Mr. Thomas waived his right to a speedy trial) *with Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (holding that an unconditional plea waives constitutional claims).  Mr. Thomas loses because he entered "an unconditional plea of guilty[, which] waives all non-jurisdictional defects including Sixth Amendment speedy trial claims."  *Johnson v. Ortiz*, No. 05-1555, 182 Fed. Appx. 804, 806, 2006 WL 1462172 at **2, (10th Cir. May 30, 2006) (unpublished) (citing *Tollett*, 411 U.S. at 267).

Second, even if there had been no waiver, his right to a speedy trial would not have been violated by the delays in his case because he waived only five months between arrest (October 18, 2007) and plea (March 21, 2008), and a delay of five months is not presumptively prejudicial under *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Thus, his claim fails and should be denied.

Four factors are balanced in constitutional speedy trial claims: "[1] the length of the delay, [2] the reason for the delay, [3] whether the defendant asserted his right to a speedy trial, and [4] whether the delay prejudiced the defendant." *United States v. Tranakos*, 911 F.2d 1422, 1427 (10th Cir. 1990) (citing *Barker*, 407 U.S. at 530).

The length-of-delay factor serves as a "gatekeeper," and the other factors are examined only when the delay is so long that it is "presumptively prejudicial." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (citations omitted). The Tenth Circuit has identified no bright line beyond which a pretrial delay is deemed presumptively prejudicial so as to trigger the *Barker* analysis. *United States v .Yehling*, 456 F.3d 1236, 1244 (10th Cir. 2006); *United States v. Dirden*, 38 F.3d 1131, 1137 (10th Cir. 1994). Generally, delays "approaching one year" are presumptively prejudicial. *Batie*, 433 F.3d at 1290. Constitutional speedy trial rights attach at either arrest or indictment, whichever is earlier. *Id.* (citations omitted).

In *United States v. Kalady*, the Tenth Circuit found that a pretrial delay of eight months was not presumptively prejudicial. 941 F.2d 1090, 1095 (10th Cir. 1991); *see also Harvey v. Shillinger*, 76 F.3d 1528, 1533 (10th Cir.1996) (listing Tenth Circuit cases finding delays of up to eight months not presumptively prejudicial) Similarly, the court found that delays of seven months and seven and one-half months were not presumptively prejudicial. *United States v. Lugo*, 170 F.3d 996, 1002 (10th Cir. 1999) (seven-months delay not presumptively prejudicial); *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994) (seven-and-one-half-months delay not presumptively prejudicial).

Mr. Thomas was arrested on October 18, 2007. ***Amended Petition*** (*Doc. 19*) at 1. He entered his guilty plea and was convicted on March 21, 2008. ***Response***, Ex. A (*Doc. 23-1*) at 1. Therefore, he waited five months and three days from the time of his arrest to conviction. Five months and three days is not presumptively prejudicial, and therefore, the Court need not address

24

the other *Barker* factors.  Mr. Thomas' Sixth Amendment right to a speedy trial was not violated, and therefore, the Court finds that he was not "forced" into entering the guilty plea by any delay in his case.  The Court, therefore, recommends that this claim be denied.

### *VII.  Conclusion*

For the foregoing reasons, the Court finds that habeas relief is not warranted on Mr. Thomas' claims.  Mr. Thomas has failed to establish that the adjudication of his claims on the merits in the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. §§ 2254(d)(1)–(2).  Therefore, the Court recommends that this case be dismissed with prejudice and that Mr. Thomas' ***Amended 28 U.S.C. Section 2254 [Petition]*** (*Doc. 19*) be denied.

### RECOMMENDED DISPOSITION

The Court recommends that Mr. Thomas' ***Amended 28 U.S.C. Section 2254 [Petition]*** (*Doc. 19*) be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.


*Lourdes A. Martínez*
_____
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED   STATES   MAGISTRATE   JUDGE**